UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 15-00076-AB (PLAx) | Date: | July 15, 2015 |
|---|---|---|---|

| Title: | *Ned Flores v. Adir International, LLC* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR. |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order GRANTING Defendant's Motion to Dismiss WITHOUT LEAVE TO AMEND and DISMISSING Plaintiff's First Amended Complaint WITH PREJUDICE(Dkt. No. 31)**

Pending before this Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 31.) Plaintiff's putative class action claims arise exclusively under the Telephone Consumer Protection Act ("TCPA," 47 U.S.C. §227). Because Plaintiff does not allege any facts that would lead to the reasonable inference that Defendant utilized an "automatic telephone dialing system" ("ATDS") under the TCPA, Plaintiff fails to allege Defendant violated the terms of the TCPA. Accordingly, the court **GRANTS** the motion **WITHOUT LEAVE TO AMEND** and **DISMISSES** Plaintiff's First Amended Complaint ("FAC") **WITH PREJUDICE**. (Dkt. No. 31.)

**I.   Background**

As alleged in the operative FAC and taken as true for the purposes of the instant motion to dismiss, Defendant "is in the business of buying consumer debts and collecting on those debts. (Dkt. No. 31, ¶5.) Beginning on September 13, 2014, Defendant

began sending Plaintiff text messages in Spanish, asking Plaintiff to contact Defendant and providing a reference number. (Dkt. No. 31, at ¶6.) Several of the text messages came from SMS short code 919-26. (*Id.*) Plaintiff responded to one of the first text messages with the word "Stop," and Defendant almost immediately replied with a message in Spanish informing Plaintiff that he would no longer receive messages. (*Id.*, at ¶8.) However, the messages did not stop, and on September 21, 2014 Defendant again sent Plaintiff an identical text message listing the same reference number. (*Id.*, at ¶9.) Plaintiff again responded "Stop" and again received the same confirmation text message. (*Id.*) After September 21, 2014, Defendant sent Plaintiff two additional text messages (on September 22, 2014 and October 3, 2014, respectively), and Plaintiff replied "Stop" to each of those text messages, too. (*Id.*) Plaintiff's cell phone carrier charges him a fee for incoming text messages. (*Id.*, at ¶13.)

This Court dismissed Plaintiff's original complaint without prejudice on virtually identical allegations, concluding Plaintiff failed to allege any facts that would permit the reasonable inference that Defendant utilized an ATDS when it sent Plaintiff the alleged text messages. (Dkt. No. 29.) In amending his complaint, Plaintiff omits a handful of references in his original complaint to debt collection. (*Compare* Dkt. No. 1, ¶¶6, 8-12; *with* Dkt. No. 30, ¶¶ 6-12.) Nonetheless, Plaintiff continues to allege in the FAC that Defendant "is in the business of buying consumer debts and collecting thereon." (Dkt. No. 30, ¶5.) Plaintiff also continues to allege that Defendant sent him the text messages for the purpose of debt collection. (*Id.*, at ¶20.) And in alleging that his claims are suitable for class action treatment, Plaintiff alleges the most important common question of fact is "[w]hether…Defendant made any debt-collection text messages…to a Class member using an automatic telephone dialing system…." (Dkt. No. 30, ¶ 19a.)

The FAC also adds the allegation that "none of the text messages mention Plaintiff directly and appear to be scripted and generic" and "the text messages confirming Plaintiff's 'Stop' text request came almost immediately after Plaintiff's 'Stop' texts, and were generic in that they once again did not make any reference to Plaintiff specifically." (Dkt. No. 30, ¶ 11.) This "new" allegation merely *characterizes* the text messages that Plaintiff previously quoted in full, however, and does not add any new facts to Plaintiff's FAC. The FAC is otherwise identical to the original complaint.

From those allegations, Plaintiff asserts individual and putative class claims against Defendant for negligent and willful violations of the TCPA. (Dkt. No. 31, ¶¶25-32.) Defendant again moves to dismiss both of Plaintiff's causes of action in his FAC on the ground that Plaintiff fails to allege Defendant utilized an ATDS as defined in the TCPA. (Dkt. No. 31.) Plaintiff opposes. (Dkt. No. 33.)[1] The Court heard oral argument on

---

[1] Defendant's reply was due on June 22, 2015. Civ. L. R. 7-10. Defendant filed a reply one week late on June 29, 2015. (Dkt. No. 37.) The Court declines to consider Defendant's untimely reply brief. Civ. L. R. 12.

the motion at a July 6, 2015 hearing, and took the matter under submission. (Dkt. No. 39.)

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)") requires that a pleading present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." That is, a pleading that does not satisfy Rule 8(a) is subject to dismissal under Rule 12(b)(6). Dismissal is proper under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 969, 699 (9th Cir. 1988). Under Rule 12(b)(2) "a court may dismiss a claim that is grouped together with other claims in a single cause of action, without dismissing the entire cause of action." *Perez v. Banana Republic, LLC*, 22 Wage & Hour Cas. 2d (BNA) 1700, 2014 WL 2918421 at *3 (E.D. Cal. June 26, 2014) (No. 14-cv-01132-JCS); *see also Hill v. Opus Corp.,* 841 F.Supp.2d 1070, 1082 (C.D. Cal. 2011).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted). Although this does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A sufficiently-pled claim must be "plausible on its face." *Id*. "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. For purposes of a motion to dismiss, allegations of fact are taken as true and are construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010).

The first step in determining whether a claim is sufficiently pled is to identify the elements of that claim. *See Iqbal*, 556 U.S. at 675. The court should then distinguish between the pleading's allegations of fact and its legal conclusions: a court "must take all of the factual allegations in the complaint as true," but should not give legal conclusions this assumption of veracity. *Id*. at 678. The court must then decide whether the pleading's factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." *Id*. at 679. The court may not consider material beyond the pleadings other than judicially noticeable documents, documents attached to the complaint or to which the complaint refers extensively, or documents that form the basis of the claims. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### III. Discussion

Defendant moves to dismiss both of Plaintiff's claims under the TCPA for failure to allege that Defendant contacted Plaintiff using an ATDS. "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A text message to a cellular telephone constitutes a "call" under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). As used in the TCPA, "'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Under the plain language of the statute, "a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d at 951.

Plaintiff alleges that Defendant used an ATDS to send text messages to him:

> Defendant used an [ATDS], as defined by 47 U.S.C. § 227(a)(1) to place the text messages to Plaintiff. In particular, the equipment used by Defendant, to send the text messages at issue, to Plaintiff, has the capacity to: 1) store or produce numbers to be called using a random or sequential number generator; and 2) to dial those numbers. Such capacity is evidenced by the fact that: 1) none of the text messages mention Plaintiff directly and appear to be scripted and generic; 2) the text messages confirming Plaintiff's "Stop" request came almost immediately after Plaintiff's "Stop" texts, and were generic in that they once again did not make any reference to Plaintiff specifically. (Dkt. No. 30, ¶11.)

"Such a naked assertion need not be taken as true," however. *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (standing alone, plaintiff's allegation that defendant "us[ed] equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" insufficient to allege defendant used an ATDS). Plaintiff's "formulaic recitation of the elements" of his TCPA claims "will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. Without more, Plaintiff's conclusory allegation that Defendant used an ATDS is little more than speculation, and cannot support a claim for relief under the TCPA. *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2014 WL 3725344, at *2 (N.D. Cal. July 24, 2014); *accord Kazemi v. Payless Shoesource, Inc.*, 2010 WL 963225, at *2 (N.D. Cal. March 16, 2010).

Plaintiff's allegation that Defendant used an ATDS to contact him is based, in part, on the claim that the text messages he received were "generic." Plaintiff alleges that

"none of the text messages mention Plaintiff directly." However, the fact that none of the text messages Plaintiff received included his name does not mean that they were "generic" and "impersonal." To the contrary, Plaintiff affirmatively alleges Defendant's text messages to him all included the same "Ref #" to identify Plaintiff if he called Defendant back. (Dkt. No. 30, ¶¶ 7, 9.) Although these text messages do not refer to Plaintiff by name, they refer to Plaintiff indirectly, suggesting that Defendants attempts to contact him were anything but "random." *See Ibey v. Taco Bell Corp.*, Case No. 12–cv–5 83 –H–WVG, 2012 WL 2401972, *1, 3 (S.D. Cal. June 18, 2012) (allegation that message was sent using ATDS was insufficient where message "did not appear to be random"). Indeed, Plaintiff's counsel conceded at the hearing on this motion that Defendant knew who Plaintiff was and that Defendant was specifically targeting Plaintiff about a debt when Defendant sent the text messages at issue.

Plaintiff highlights the fact that the text messages appear "scripted" as indicative of an ATDS. (Dkt. No. 33, pp. 5-6.) Similarly, Plaintiff suggests that the immediate responses he received in reply to his "Stop" texts permit the reasonable inference that Defendant's used an ATDS. (*Id.*) It may be that the use of a generic template and immediate responses permit the reasonable inference that Defendant's equipment is capable of *some form of automation*. However, "automation" alone is not enough to satisfy the definition of an ATDS under the TCPA. The sort of automation that matters under the TCPA is "the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Plaintiff's defense to the motion to dismiss is, in essence, an argument that alleging *any measure of automation* is sufficient to allege the *specific form of automation* necessary to sustain a claim under the TCPA. Without more, that inference is one that Rule 8 simply cannot bear. *See Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) ("The text messages are generic and impersonal, as Plaintiffs assert, but that is not enough to make the claims plausible. [Citation] It is just as conceivable that the text messages were done by hand, or not using an ATDS.")

To be sure, it is at least *possible* that Defendant utilized a system that is capable of storing or generating a random or sequential list of telephone numbers and then dialing them – i.e., none of Plaintiff's allegations affirmatively rule it out. But Plaintiff must do more than point to "a sheer possibility that [] defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Plaintiff must allege facts that, if true, would take his claims "across the line from conceivable to plausible." *Twombly*, 556 U.S. at 680. Plaintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS. As in the original complaint, Plaintiff's FAC again alleges that Defendant is a debt collector that sent Plaintiff a number of text messages for the purpose of collecting on a specific debt, all of which included the same reference number. *See Daniels v. Comunity Lending, Inc.*, No.

13CV488-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014), appeal dismissed (Feb. 26, 2014) (dismissing complaint because the defendant's "alleged calls to Plaintiffs do not appear to have been 'random,'[citation]; instead, the calls are alleged to be directed specifically toward Plaintiffs."); *Knutson v. ReplyA, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (dismissing TCPA claim where "[t]here [was] nothing in the complaint that allow[ed] the court to infer the calls were randomly generated or impersonal")

Moreover, Plaintiff's reliance on cases involving phone calls using an artificial or prerecorded voice is unpersuasive. *See Robinson v. Midland Funding, LLC*, No. 10CV2261 MMA AJB, 2011 WL 1434919, at *3 (S.D. Cal. Apr. 13, 2011); *Reyes v. Saxon Mortgage Servs., Inc.*, No. 09CV1366 DMS (WMC), 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009). In both *Robinson* and *Reyes* the plaintiffs alleged the defendant had made calls using an artificial or prerecorded voice, which is an *independent basis* for liability under the TCPA. 47 U.S.C. § 227(b)(1)(A); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1246 (E.D. Cal. 2013) ("Since the applicable section is written in the disjunctive, a violation may occur if any one of an automated telephone dialing system, an artificial voice, or a prerecorded voice is used to make the call."). Because the plaintiffs in those cases alleged use of an artificial or prerecorded voice, the district courts allowed their TCPA claims to move beyond the pleading stage without any need to consider whether those plaintiffs *also* adequately alleged use of an ATDS. *See also Robinson v. Midland Funding, LLC*, 2011 WL 1434919, at *3; *Reyes v. Saxon Mortgage Servs., Inc.*, 2009 WL 3738177, at *4   Here, by contrast, Plaintiff's TCPA claims rest solely on his conclusory allegation that Defendant used an ATDS, which will not support a plausible claim for relief. *Knutson v. ReplyA, Inc.*, 2011 WL 291076, at *2.

Admittedly, a number of courts have allowed TCPA claims to advance beyond the pleading stage where a plaintiff alleged the defendant sent a text message using an SMS short code, sent a text message containing "impersonal" language, or both. *See, e.g., Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013); *In re Jiffy Lube Int'l, Inc. Text Span Litig.*, 847 F. Supp. 2d 1253, 1259-60; and *Kramer v. Autobytel, Inc., supra*, 759 F. Supp. 2d at 1172 (N.D.Cal.2010). However, each of those cases involved promotional text messages sent to advertise a particular product, and are, thus, factually distinguishable from Plaintiff's claims. As the district court in *Kramer* noted, the defendants in those cases "had no other reason to be in contact with [the] Defendants," and the promotional nature of the text messages suggested at least some level of random targeting. *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d at 1171. Here, by contrast, Plaintiff's allegations suggest Defendant's text messages were anything but random or "impersonal." Plaintiff alleges that Defendant contacted him for the purpose of collecting on a specific debt. Moreover, each of the text messages included the same reference number, even if they did not identify Plaintiff

by his name. This level of direct targeting suggests some sort of "human curation or intervention" rather than the "random or sequential number generator" required for an ATDS.[2] *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d at 1292; *accord Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643-44 (E.D. Pa. 2014).

The Court agrees that "[p]laintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more." *Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (quoting *Gragg v. Orange Cab Co.*, Inc., 2013 WL 195466, at *2 n.3 (W.D. Wash. Jan.17, 2013).) Unlike the authorities Plaintiff relies upon, however, "the content of the message, the context in which it was received, and the existence of similar messages" all weigh *against* an inference that Defendant used an ATDS. The content of the messages, even if drawn from a template, included a unique reference number that remained consistent in every text message. (Dkt. No. 30, ¶¶ 7, 9.) The context of the messages was Defendant's desire to collect on a specific debt, not mass marketing. (*Id.*, at ¶¶ 19a, 20.) And the existence of similar messages to the same person, containing the same reference number, and sent for the purpose of debt collection only supports the inference that Defendant expressly targeted Plaintiff. That sort of specificity belies Plaintiff's claims of randomness and does not, by itself, support a reasonable inference that Defendant used an ATDS. Rule 8 may be "generous," but "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678; *accord*

---

[2] At the hearing on the motion, Plaintiff argued that the Court's ruling effectively creates a non-statutory exemption for debt-collection ATDS calls to cellular telephones under the TCPA if those calls are for non-marketing purposes. *Cf.* 47 U.S.C. § 227(b)(2)(B), (C) [granting the FCC authority to exempt non-marketing calls to residential phones but not extending that same authority to cellular phones]; *and* 47 C.F.R. § 64.1200 [FCC implementing regulation].) According to Plaintiff, the Court's ruling imposes a heightened pleading standard for plaintiffs alleging that non-marketing calls to cellular phones violated the TCPA despite the fact that the TCPA is "content neutral" in the context of cellular phones. *See Melingonis v. Network Commc'ns Int'l Corp.*, No. 10 CV 1364 MMA NLS, 2010 WL 4918979, at *1 (S.D. Cal. Nov. 29, 2010) ("the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party…regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'"). The fact that the TCPA is content neutral *if the defendant uses and ATDS*, however, does not relieve Plaintiff of his obligation to plead plausible allegations that Defendant *actually used and ATDS*. The Court's holding "concerns context rather than content, and context is indisputably relevant to determining whether a particular call is actionable under the TCPA." *Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012). The Court requires nothing more of Plaintiff than Rule 8 and section 227—it simply holds that Plaintiff must (but has failed to) allege contextual facts to take his allegation that Defendant used an ATDS "across the line from conceivable to plausible." *Twombly*, 556 U.S. at 680.

*Huricks v. Shopkick, Inc.*, *supra*, 2014 WL 3725344, at *2 (dismissing TCPA claim where "plaintiffs' complaint [was] devoid of any facts that could support a reasonable inference that [defendant] used an ATDS to send the subject text messages"). "Because [Plaintiff's FAC] is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686.

## IV.   Conclusion

The Court reiterates that Plaintiff need not allege the technical ins-and-outs of Defendant's text messaging system to survive a motion to dismiss. However, in granting Defendant's prior motion to dismiss, the Court emphasized that, at a minimum, Plaintiff must allege some indirect facts to suggest that Defendant's system is capable of acting as an ATDS. *Knutson v. ReplyA, Inc.*, *supra*, 2011 WL 291076, at *2. Yet Plaintiff amended by bringing an FAC that is identical in substance (if slightly different in form) to the original complaint. Plaintiff's FAC added no new facts to suggest Defendant's system possesses the capabilities of an ATDS. Despite clear guidance form the Court and an opportunity to amend, Plaintiff fails to allege any facts that would permit the reasonable inference that Defendant sent Plaintiff the alleged text messages using an ATDS. Use of an ATDS is an essential element of both of Plaintiff's claims, and the Court **GRANTS** Defendant's motion (Dkt. No. 31) and **DISMISSES** Plaintiff's FAC.

A "district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Courts routinely deny leave to amend where, as here, "Plaintiff[] ha[s] had ample opportunity to properly plead a case and ha[s] failed to do so." *Id*; *accord Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (affirming trial court's dismissal of first amended complaint without leave to amend because "[l]eave to amend may also be denied for repeated failure to cure deficiencies by previous amendment"). Plaintiff does not identify any facts he can allege in good faith that might save his claims, nor does the Court find any reason to believe that further amendment would be fruitful.[3] Accordingly, the Court grants Defendant's motion **WITHOUT LEAVE TO AMEND** and dismisses the FAC **WITH PREJUDICE**.

---

[3] At the hearing on the motion, Plaintiff conceded that he has no other facts that would "spruce up" his claim that Defendant used an ATDS. Plaintiff does not suggest, for example, that he can identify another individual who received a similar text from defendant randomly or that he has an expert who will opine that automated text messaging platforms usually include the capacity to send text messages to random or sequential phone numbers. Plaintiff did represent that cross-defendant Phaz2, Inc. (the party that allegedly sent the text messages) does marketing work, but effectively conceded that fact would not affect the result. Nor did Plaintiff dispute Defendant's representation that Phaz2, Inc. intentionally uses different systems for its marketing messages and its debt collection messages. In any event, Plaintiff had ample opportunity to add that allegation when he filed his FAC, but failed to do so. *Salameh v. Tarsadia Hotel*, *supra*, 726 F.3d at 1133.

In light of the Court's order dismissing Plaintiff's FAC with prejudice, the Court **VACATES** all future deadlines and hearings in this action (including the October 19, 2015 hearing on Plaintiff's motion for class certification, *see* Dkt. No. 28) as moot.

**IT IS SO ORDERED**